**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION**

| | | |
|---|---|---|
| **LIFETIME HOMES, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2:05cv479-FtM-33DNF** |
| | ) | **Judge Thomas A. Wiseman, Jr.** |
| **RESIDENTIAL DEVELOPMENT** | ) | |
| **CORPORATION d/b/a WALKER HOMES, INC.,** | ) | |
| **RESIDENTIAL LAND ACQUISITIONS, LLC,** | ) | |
| **AMERILAND INVESTMENTS, LLC,** | ) | |
| **SGD INVESTMENTS LLC,** | ) | |
| **RONALD C. WALKER, a/k/a RONALD C.** | ) | |
| **WALKER, JR., CLAIRE WALKER POPE, and** | ) | |
| **RODNEY POPE** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

On October 5, 2005, Plaintiff Lifetime Homes, Inc. filed its one-count complaint for copyright infringement against Defendants Residential Development Corporation d/b/a Walker Homes, Inc. ("RDC"), Residential Land Acquisition, Ameriland Investments, LLC, SGD Investments, LLC, Ronald C. Walker, a/k/a Ronald C. Walker, Jr. ("Ron Walker"), Claire Walker Pope ("Ms. Walker Pope") and Rodney Pope (collectively the "Defendants") based on allegations that Defendants infringed on its copyrighted "Model A" home design plan ("Model A") via the design, advertisement and construction of RDC's model home design known as the "Michael."[1] Pending before this Court are the following motions: (1) Plaintiff's Motion for Partial Summary Judgment (Doc. No. 40); (2) Defendants' Motion for Summary Judgment (Doc. No. 35); and (3) Defendants' Motion in Limine to Prohibit Reference to or Evidence of Prior Proceeding and Settlement Between Defendant Claire Walker Pope and Plaintiff (Doc. No. 54) ("Defendant's Motion in Limine to Exclude Settlement"). This case is set for bench trial on March 5, 2007.

For the reasons set forth below, the Court will GRANT Plaintiff's Motion for Partial Summary Judgment as it relates to Plaintiff's ownership of a valid copyright of the Model A and whether Defendants had access

---

[1]Plaintiff alleges that Defendants infringed upon Plaintiff's copyright in the Model A by advertising, designing, constructing and participating in the construction of numerous residences under the Model name(s) "The Michael", "The Michael 2", "The Michael 3", "The Michael 4", and possibly other names, all of which were copied largely from Plaintiff's Model A copyrighted work. (Compl. at ¶ 19.) Reference to the "Michael" home design, plan or model is a reference to all of the Michael models collectively unless otherwise noted.

to the Model A (Doc. No. 40), but DENY Plaintiff's Motion for Partial Summary Judgment on all other bases (Doc. No. 40).  The Court will also GRANT Defendants' Motion for Summary Judgment in so far as it pertains to claims against Defendants Residential Land Acquisition, Ameriland Investments, SGD Investments and Mr. Pope (Doc. No. 35), but DENY Defendants' Motion for Summary Judgment as to all other Defendants (Doc. No. 35).  In addition, as discussed below, the prior proceeding and settlement between Ms. Walker Pope and Plaintiff is potentially relevant to the issues remaining in this case and the Court will therefore DENY Defendants' Motion in Limine to Exclude Settlement without prejudice, leaving the Court open to consider the relevance and any objections at trial.

I.       **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff is a builder engaged in the business of designing and constructing homes.  Plaintiff is the owner of an architectural work entitled the "Model A" which was created in 1993.  The Model A plan is for an entry level starter home that was specifically designed to be efficient to build, minimizing construction cost, and quick to sell, while maintaining a level of quality and style that would cause a buyer to select it over its competition.  (Doc. 40, at 1.)  According to Plaintiff, the design of the Model A is intended to distinguish itself from the competition by giving what was, essentially, a smaller house the feel of a bigger one.

The Model A was originally designed by William Nunez while working with his company Heartland Homes, Inc..  According to Plaintiff, Nunez intended to enter into a business relationship with a man named Al Johnson to construct homes based upon his design and plan for the Model A, but Johnson and Nunez's plans to form a construction company together did not work out.  However, Johnson did enter into a business relationship with Ms. Walker Pope, one of the defendants in this case, in order to build homes.  Together Johnson and Ms. Walker Pope formed a corporation called Housing and Urban Design, Inc. ("HUD").  Johnson and Ms. Walker Pope were each fifty percent owners of HUD until May of 2000 when Johnson sold his half of the company to Ms. Walker Pope making her the sole owner.

In 1995, shortly after forming HUD with Ms. Walker Pope, Johnson approached Nunez and Heartland Homes to request a license for HUD to build the Model A.  Nunez and Heartland Homes agreed to award Johnson with a non-exclusive license for HUD to use the Model A plans to build homes in Charlotte County, Florida only.  The parties entered into a written agreement setting out the terms of the license.  Johnson used

2

the Model A plans to draft and build slightly altered and derivative plans, renaming them the "Coastland" and later, the "Concord." According to Plaintiff, HUD, Ms. Walker Pope and Johnson, with the help of construction superintendent Duane Hill[2] went on to build over 200 homes based upon the Model A outside Charlotte County, Florida in direct violation of the licensing agreement. (Doc. No. 40, at 2-3.)

Nunez discovered the allegedly infringing activities in 2002, but by that time he had transferred ownership of the Model A to his new company, Plaintiff Lifetime Homes, Inc.. Plaintiff registered the work in accordance with the Federal Copyright Act and received a certificate of registration dated September 13, 2002 from the Register of Copyrights, securing the exclusive rights and privileges in and to the copyright of the Model A. Subsequently, in 2003, Plaintiff filed suit alleging copyright infringement against HUD. Ms. Walker Pope and HUD eventually settled the case (the "prior settlement"), agreeing to pay $500,000 and "unequivocally acknowledg[ing] that [Lifetime was] the sole owner of the copyrights" in the Model A and HUD's derivative designs for the Coastland and the Concord model homes.

Ron Walker claims that he was employed by his mother, Ms. Walker Pope, in the sales department of HUD in 1997 and 1998, prior to the first lawsuit against HUD.[3] According to Mr. Walker, he was fired by Ms. Walker Pope's business partner, Al Johnson, in 1998 after working for HUD for six months. Mr. Walker claims to have gone into "supervising off the books" for HUD for a period of four to five months when he monitored "thirty" houses, many of which were Model A homes that were renamed Coastland. After he was "fired" in 1998, Mr. Walker began studying to become a general contractor. He received his license in 1999 and formed a company called Residential Development Corporation ("RDC") d/b/a/ Walker Homes. Walker Homes was originally formed and owned at least in part by Ms. Walker Pope. According to Mr. Walker, around this same time, he collaborated with Duane Hill to design the plans for the "Michael" model home at issue in this action.

Both the Defendants' Michael home plans and Plaintiff's copyrighted Model A are designs for

---

[2]Plaintiff contends that Duane Hill worked for Nunez and Heartland from 1992-1996 and was also employed by HUD from 1996-2000.

[3]Whether Ron Walker was actually involved with and/or employed by HUD prior to Plaintiff's first lawsuit for copyright infringement against HUD and his mother Ms. Walker Pope is apparently disputed. In an affidavit filed in this case, Mr. Johnson indicates that contrary to Ron Walker's claims, Ron Walker was never employed by HUD.

"standard" three bedroom, two bath homes.  Defendants claim that Mr. Walker and Duane Hill designed the Michael model by sketching the design on a napkin or placemat and that the design was subsequently delivered to an independent draftsman, James Scott, who prepared the formal Michael model house plans. Plaintiff alleges that the Michael design is simply another version of the Model A and that Ron Walker, with the assistance of Ms. Walker Pope, used the Model A once again to establish a new business.  (Doc. No. 40, at 4.)  Mr. Walker denies that the Michael and its derivatives, the Michael II, the Michael III, and the Michael IV were based upon the Model A.

On October 5, 2005, Plaintiff filed its complaint alleging Defendants infringed Plaintiff's copyright in the Model A by advertising, designing, constructing and participating in the construction of numerous residences under the Michael model names, which were copied largely from the copyrighted work in Plaintiff's Model A design.  Plaintiff seeks actual damages as well as the profits of the Defendants which resulted from the infringement of Plaintiff's copyrighted model, as well as attorneys' fees and costs.  In the alternative, Plaintiff seeks statutory damages.  In addition, Plaintiff seeks injunctive relief to prevent the further infringement of its copyrighted model.

On October 31, 2005, Defendants filed a motion to dismiss the claims.  The Court denied the motion to dismiss on April 6, 2006, noting that Defendants' arguments, though not appropriate at that stage of the litigation, would be properly considered by the Court in a motion for summary judgment.  Defendants filed their motion for summary judgment on September 5, 2006 and Plaintiff filed its cross-motion for partial summary judgment on September 18, 2006.  Both parties have filed responses in opposition.  On December 22, 2006, Defendants also filed a Motion in Limine and Incorporated Memorandum of Law requesting the Court prohibit introduction of prior proceeding and settlement regarding Defendant Claire Walker Pope.  Plaintiff filed its response on January 2, 2007.  All three motions are currently pending before this Court.  This case is scheduled for a bench trial in March 2007.

II.      PENDING MOTIONS

      A.      Motions for Summary Judgment

            1.      Standard of Review

Summary judgment is proper when there is no genuine issue of material fact and the moving party

is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "The burden of demonstrating the satisfaction of this standard lies with the movant, who must present pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that establish the absence of any genuine material, factual dispute." *Branche v. Airtan Airways, Inc.*, 342 F.3d 1248, 1252-53 (11th Cir. 2003) (internal quotations omitted).  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).  In determining whether summary judgment is appropriate for either party herein, the Court must draw inferences from the evidence in the light most favorable to the nonmovant and resolve all reasonable doubts about the facts in favor of the party opposing the motion.  *See Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1149 (11th Cir. 2005) (citations omitted); *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999).  However, once a moving party has sufficiently supported its motion for summary judgment, the non-moving party must come forward with significant, probative evidence demonstrating the existence of a triable issue of fact.  *Irby v. Bittick*, 44 F.3d 949, 953 (11th Cir. 1995) (internal citations omitted).

Some courts have observed that summary judgment is often inappropriate in copyright infringement cases due to their inherent subjectivity.  *See Beal v. Paramount Pictures, Corp.*, 20 F.3d 454, 459 (11th Cir. 1994) (citing *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 977 (2d Cir. 1980)).  Specifically, because the proof in copyright cases is fact-intensive and highly circumstantial, often involving factual comparison between works, whether two works are substantially similar for purposes of proving copyright infringement is often a question for the fact-finder.  Plaintiff relies on this premise in its response to Defendants' motion for summary judgment, arguing that similarity between architectural designs is a factual determination that must be made by the trier of fact" and therefore, summary judgment would be inappropriate in the case at bar.  However, the Court notes that in cases where the parties have agreed to a bench trial, such as the case at bar, the Court is the trier of fact and may review the works and weigh the evidence at the summary judgment stage.  Moreover, although "[s]ummary judgment is granted on the issue of similarity in those rare cases where no reasonable jury could find that the two works are substantially similar" (Pl.'s Response, at 5 (Doc. No. 42) (citing *Herzog v. Castle Rock Entertainment*, 193 F.3d 1241, 1247 (11th Cir. 1999))), courts have been willing to grant summary judgment in infringement cases when it is clear that the moving party is entitled to judgment

as a matter of law.  *Beal*, 20 F.3d at 459.

### 2.   Plaintiff's Motion for Partial Summary Judgment (Doc. No. 40).[4]

#### a.   *Whether Plaintiff Is the Owner of a Valid Copyright of the Model A.*

In order to establish that Defendants' Michael home design infringes upon Plaintiff's copyright of the Model A house plan, Plaintiff must prove that: (1) it owns a valid copyright in the Model A design; and (2) Defendants copied the original elements of the Model A design in creating their Michael design.  *See Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340 (1991); *Beal*, 20 F.3d at 459.  Although copyright protection attaches at the time an author creates an original work susceptible to copyright under 17 U.S.C. § 102(a), an owner's cause of action for infringement of the copyright is unenforceable until compliance with the formalities of registration, including payment of fees and deposit of copies of the work, is shown. According to Plaintiff, it has complied in all respects with the federal Copyright Act and all other laws governing copyright securing the exclusive rights and privileges in and to the copyright of the Model A, and is therefore entitled to summary judgment on the issue of ownership of a valid copyright of the Model A.  (Doc. No. 40, at 6.)

In support of its claim of ownership, Plaintiff points out that it received a certificate of registration for the Model A design dated September 13, 2002 from the Register of Copyrights and that the certificate of

---

[4]On October 2, 2006, Defendants filed their Memorandum in Response to Plaintiff's Motion for Partial Summary Judgment and Motion for Leave to Supplement Memorandum in the Event Plaintiff's Dispositive Motion is Deemed to Have Been Timely Filed (Doc. No. 45) arguing that the Court should refuse to consider the pending motion for partial summary judgment because the motion, filed on September 18, 2006, was filed after the deadline for dispositive motions of September 4, 2006.  On October 3, 2006, Defendants filed their Amended Memorandum in Opposition to Plaintiff's Motion for Summary Judgment (Doc. No. 46) recognizing that the Court had entered an Order extending the deadline to file dispositive motions until Monday, September 18, 2006 (Doc. No. 34) and Plaintiff's motion was in fact timely.  Plaintiff's filed a Response in Opposition to Defendants' Motion to Supplement (Doc. No. 47) arguing that there is no justifiable excuse for Defendants' actions in failing to file a proper response and asking the Court to deny Defendants' Motion for Leave and/or strike the Motion in its entirety for failure to comply with Local Rule 3.01(g) by not conferring with opposing counsel.  (Doc. No. 47, at 2-3.)  Although there is no dispute that the stipulation to extend the dispositive motion deadlines was submitted by both parties and Defendants have set forth no explanation as to how they missed the fact that Plaintiff's motion was filed within the deadline, the Court cannot say that Defendants' one day delay in correcting the initial response or failure to confer with opposing counsel before filing their amended response was actually in bad faith or is in fact prejudicial to Plaintiff in the Court's consideration of its motion.  Moreover, denying Defendants' motion for leave and striking their amended response to Plaintiff's dispositive motion is a severe sanction that does not appear to be justified in the present case.  Accordingly, the Court finds that Defendants' amended memorandum in opposition to Plaintiff's motion for partial summary judgment is properly before the Court.

registration for the Model A was attached as Exhibit A to the complaint.  Plaintiff argues that by attaching the certificate to the complaint it established the element of ownership.  Moreover, the fact that none of the Defendants have offered any evidence that Plaintiff is not the owner of the copyright at issue, according to Plaintiff, supports its position that it is entitled to summary judgment on the issue.  (Doc. No. 40, at 6.)

In response, Defendants argue that Plaintiff's proof of ownership, its Certificate of Registration of the Model A, cannot be used as *prima facie* evidence of ownership because the registration was not made within five years after the first publication.  (Doc. No. 46, at 3.)  According to Defendants, Plaintiff's act of licensing the use of the Model A design to Al Johnson and Engineering and Design Consultants in 1995 constituted "publication" of the work under the Copyright Act and in order to benefit from the fact that a certificate of registration is *prima facie* evidence of the copyright, Plaintiff needed to file its copyright registration by October 9, 2000.  Plaintiff does not dispute the date of publication.

It is true that in cases where the registration is filed within five years after the first publication of the work, a certificate of registration may, without more, "constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate," 17 U.S.C. § 410(c), including the requirements of originality and susceptibility to copyright under 17 U.S.C. § 102(a).  However, it is well-settled that ownership of the copyright is demonstrated through compliance with the formalities of registration.  *Donald Frederick Evans & Assoc., Inc., v. Continental Homes, Inc.*, 785 F.2d 897, 903 (11th Cir. 1986).  In the present case, Defendants only challenge to the validity of Plaintiff's copyright of the Model A home design is the fact that Plaintiff did not file the copyright registration until almost seven years after it was first published, two years past the five year statutory period.  (Doc. No. 46, at 3.)  However, Defendants neglect to mention that the same statutory provision they rely on to challenge Plaintiff's certificate of registration as evidence of its ownership of the copyright, also provides that "[t]he evidentiary weight to be accorded the certificate of registration made thereafter shall be within the discretion of the court."  17 U.S.C. § 410 (c).

Under the statute, it is within the Court's discretion to consider Plaintiff's certificate of registration in this case as evidence that Plaintiff owns a valid copyright to the Model A design, thereby shifting the burden to Defendants to rebut the evidence.  Although Plaintiff did not file the copyright registration within the five year time period, Plaintiff has produced the certificate of registration for the Model A and Defendants have not

pointed to any evidence indicating that Plaintiff's certificate of registration is not valid.  Further, Defendants make no argument nor present any evidence to support a finding that Plaintiff does not in fact own the copyright for the Model A plans.  Accordingly, the Court finds that Plaintiff has established it owns a valid copyright as to the Model A plans as a matter of law and is entitled to summary judgment as to this element of its claim.

        b.    *Whether Plaintiff Has Established Defendants Had Access to the Model A.*

As discussed further below, Defendants contend that Plaintiff cannot show that the copyrighted portions of the Model A plans were copied and therefore, Defendants are entitled to summary judgment as a matter of law.  (Doc. No. 35, at 8.)  It is well-settled that Plaintiff can establish copying by Defendants by either direct or circumstantial evidence.  Recognizing that plaintiffs rarely have direct evidence of copying and circumstantial evidence is often available, courts have consistently held that a plaintiff can prove copying indirectly by establishing defendant had access to the copyrighted material and defendant's work is substantially similar to the plaintiff's protected expression.  *See Continental Homes*, 785 F.2d at 904.  In the present case there is no apparent direct evidence that Defendants' Michael design and its derivatives were copied from the Model A home design, therefore, Plaintiff must show first, that Defendants had access to the Model A home design and second, that Defendants' Michael design is substantially similar to Plaintiff's protected expression.  *Id.*

A demonstration of access does not require proof of actual viewing.  "Access" under the Copyright Act means merely "an opportunity to view the protected material."  *LaJoie v. Pavcon, Inc.*, 146 F. Supp. 2d 1240, 1247 (M.D. Fl. 2000).  Plaintiff contends that the element of access is undisputable and it is therefore entitled to summary judgement that Defendants Ron Walker and Ms. Walker Pope had access to the Model A.  (Doc. No. 40, at 7.)  According to Plaintiff, the sole participants in the initial creation of the Michael design, Ron Walker, Duane Hill and Claire Walker, have each admitted that they had direct access to the Model A either while working for HUD or building the Model A through HUD.  (Doc. No. 40, at 7.)  Based on this evidence, Plaintiff contends that access is established as a matter of law as to Ron Walker and Ms. Walker Pope.

Defendants do not dispute Plaintiff's contention that Ron Walker, Duane Hill and Ms. Walker Pope

had access to the Model A.  Rather, Defendants focus their argument, as set forth below, on the proposition that Ms. Walker Pope is not a proper defendant in this matter and regardless, Plaintiff cannot show that the Michael and the Model A are substantially similar.  (Doc. No. 35.)  Based on a review of the record, the Court finds that there is no question that Defendants Ron Walker, Ms. Walker Pope and RDC, through Mr. Walker, had a reasonable opportunity to view or opportunity to copy the Model A design.  Thus, Plaintiff has established access as a matter of law for each of these Defendants.[5]

    c.  *Whether Plaintiff is Entitled to Summary Judgment as to the Amount of RDC's Gross Revenue.*

    Plaintiff seeks summary judgment on the amount of Defendants' alleged gross revenues from selling 682 homes allegedly constructed with the use of the allegedly infringing floor plans, either the Michael or one of its derivatives.  Pursuant to 17 U.S.C. § 504(b), a successful plaintiff is entitled to both actual damages and "any profits of the infringer that are attributable to the infringement and are not taken into account in computing actual damages."  17 U.S.C. § 504(b).  In an action for profits attributable to the infringement, the copyright owner is required to present proof of the infringer's gross revenue.  *Id.*  It is the infringer's burden to prove deductible expenses and the portion of profits attributable to factors other than the copyrighted plans.  *Id.*  Plaintiff has the burden of proof regarding (1) its actual damages, and (2) Defendants' gross revenue.  *Cornerstone Home Builders, Inc. v. McAllister*, 303 F. Supp. 2d 1317, 1321 (M.D. Fl. 2004) (internal citations omitted).

    According to Plaintiff, Defendants have produced their job files for the Michael and its derivatives, including contracts and closing statements for the sale of each of the 682 homes based on those designs, and according to the files the revenues generated by the 682 sales totaled $92,279,887.  (Doc. No. 40, at 8.) Plaintiff contends that there is no evidence to contradict the revenue figure and although Defendants are entitled to prove their deductible expenses at trial, Plaintiff is entitled to summary judgment that the gross revenues from the allegedly infringing acts of Defendant RDC are the amount set forth in Defendants' files.

    In response, Defendants point to the record for support of their assertion that there are numerous

---

    [5]The Court acknowledges that there are other defendants named in this matter that Defendants argue are not properly named in the case at bar; however, neither party mentions the other defendants in relation to the issue of access to the Model A.

genuine issues of material fact as to the precise amount of gross revenues earned by RDC that are attributable to the alleged infringing activities. (Doc. No. 46, at 4.) According to Defendants, the records Plaintiff used to arrive at the gross revenue figures have not been authenticated, thus making the figure unreliable. Moreover, Defendants argue that RDC's profits from the construction of its homes are not attributable to Plaintiff' copyrighted plans, but instead to Defendants' building processes and sale activities and any award of damages should be limited to the price of the plans as offered for sale to the public. Defendants also point out that the gross revenue figure presented by Plaintiff does not account for revenues that Defendant obtained from the sale of the land as opposed to the buildings.

After considering all inferences drawn from the underlying facts in the light most favorable to Defendants, the Court finds that Plaintiff has not met its burden of proving that no genuine issue of material fact exists with regard to RDC's gross revenue from the sales of the allegedly infringing homes. First and foremost, there is no question that Plaintiff's gross revenue figure was derived from information contained on a list that Plaintiff concedes is "a *summary* of information gathered from the documents produced by Defendants in this case" (Doc. No. 40, at n. 6) (emphasis added), not the *actual* documents produced by Defendants. Further, according to Defendants, the documents from which the information on the list was allegedly summarized have not been authenticated, an assertion Plaintiff does not dispute. Despite the fact that the documents Plaintiff claims it has relied on were allegedly produced by Defendants, the Court cannot say at this time whether Plaintiff's revenue calculation are based on the appropriate authenticated records.

In addition, even if the information gathered from Defendants' documents was authenticated, an issue of fact clearly exists regarding whether and to what extent the profits earned by Defendants from building and selling the homes is attributable to Plaintiff's copyrighted works. Based on the record, the Court is unable to determine which figures in Defendants' records should be included in determining the profits earned by RDC by its alleged infringing activities. Accordingly, the Court finds that summary judgment is inappropriate on the issue of RDC's gross revenues.

2. **Defendants' Motion for Summary Judgment (Doc. No. 35).**

a. *Whether Plaintiff can show that the Michael home designs are "substantially similar" to the copyrighted elements of the copyrighted designs for Plaintiff's Model A home designs.*

Copyright protection subsists in original works of authorship which are fixed in any tangible medium of expression and include architectural works. 17 U.S.C. § 102(a). An "architectural work" is defined as a work which is the design of a building which is embodied in any tangible medium of expression including the architectural plans or drawings for a building. 17 U.S.C. § 101. "The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features." *Id*. It is well-settled in the Eleventh Circuit that original floor plans and construction drawings for single family homes can be protected under the copyright laws. *See Imperial Residential Design*, *Inc. v. Palms Dev. Group, Inc.*, 70 F.3d 96 (11th Cir. 1995); *Arthur Gutenberg Homes, Inc. v. Drew Homes*, *Inc.*, 29 F.3d 1529, 1530 (11th Cir. 1994); *Howard v. Sterchi*, 974 F.2d 1272, 1275-76 (11th Cir. 1992). In the present case, as discussed above, it is undisputed that the Model A design is protected by copyright laws and the Court finds as a matter of law that Plaintiff owns a valid copyright of the Model A design**.**

In order to establish that Defendants' Michael home design infringes upon Plaintiff's copyright of the Model A house plan, Plaintiff must show that Defendants copied the original elements of the Model A design in creating their Michael design. *See Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 361 (1991); *Beal*, 20 F.3d at 459. Only the copying of original things which "owe their origin" to the Plaintiff are actionable; the originality requirement rules out protecting things that as to which by no stretch of the imagination Plaintiff could be called the author. *Feist Publications, Inc.*, 499 U.S. at 361 (citations omitted). Hence, copyright protection does not encompass general concepts or "standard features." *John Alden Homes. Inc. v. Kangas*, 142 F. Supp. 2d 1338, 1343 (M.D. Fla. 2001).

Defendants contend that Plaintiff cannot show that the copyrighted portions of the Model A plans were copied and therefore, Defendants are entitled to summary judgment as a matter of law. (Doc. No. 35, at 8.) Plaintiff has not presented any direct evidence of copying. Thus, Plaintiff must first show that Defendants had access to the Model A home design and second, that Defendants' Michael design is substantially similar to Plaintiff's protected expression. *See Donald Frederick Evans & Associates, Inc.*, 785 F.2d at 904. Proof of access and substantial similarity raises a presumption of copying which then shifts to Defendants the burden of rebutting this presumption with proof of independent creation. *Calhoun v. Lillenas Publishing,* 298 F.3d 1228, 1232 (11th Cir. 2002). As discussed above, there is no question that Defendants Ronald Walker, Ms.

11

Walker Pope and RDC had access to the Model A design.  This leaves only the issue of whether the Michael model design is "substantially similar" to the copyrighted Model A design.

To show substantial similarity, Plaintiff must establish that "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work."  *Original Appalachian Artworks, Inc. v. ToyLoft, Inc.*, 684 F.2d 821, 829 (11th Cir. 1982).  "An 'average lay observer' presumably is an individual who, without any vested interest in the governing issue, is sufficiently informed and alert to identify precisely the differences in competing designs, yet sufficiently informed and independent to fairly identify and assess the similarities; that is, at a minimum, neither an engaged expert nor an oblivious passerby.  *John Alden Homes, Inc.*, 142 F. Supp. 2d at 1344 (*quoting Arthur Gutenberg Homes,* 891 F. Supp. at 1567).  In evaluating substantial similarity, the Court may assess the presence of differences between the two works.  *Howard*, 974 F.2d at 1276; *Lajoie*, 146 F. Supp. 2d at 1247.  "Whether differences negate infringement depends upon whether the differences 'so outweigh similarities that the similarities can only be deemed inconsequential within the total context of the copyrighted work.'"  *Lajoie*, 146 F. Supp. 2d at 1247 (*quoting Maloney*, 891 F. Supp. at 1568 (citations omitted)).

Defendants argue that "even if the floor plans are visually similar, the court must also consider the dissimilarities," and "in architectural plans of this type, modest dissimilarities are more significant than they may be in other types of art works . . . ."  *John Alden Homes, Inc.*, 142 F. Supp. 2d at 1345 (citations omitted). Particularly, Defendants rely on the Affidavit of Ronald Walker, one of the defendants, specifically citing what he claims are over fifty (50) dissimilarities between Plaintiff's Model A and its Michael model design.  (Doc. No. 35-2.) According to Mr. Walker, dissimilarities between the models include, but are not limited to, different room dimensions and total living area (1221 square feet for the Michael model and 1147 square feet for the Model A) and different placement of specific elements within the rooms including windows, closets and fixtures.  Based on the over fifty alleged dissimilarities set forth in Mr. Walker's affidavit, Defendants argue that Plaintiff cannot establish that the Michael plans are substantially similar to the copyrighted house plans of the Model A and Plaintiff, therefore, cannot prove that Defendants copied the copyrighted house plans. Accordingly, Defendants assert they are entitled to summary judgment.

In response, Plaintiff argues simply that "[i]n examining these plans, a fact-finder could easily conclude

that these plans are substantially similar, if not virtual duplicates." (Doc. No. 42, at 6.) Plaintiff does not respond to each of the fifty "dissimilarities" cited by Defendants, nor does Plaintiff present any testimony or evidence specifically identifying what elements of the Michael designs are substantially similar to the copyrighted elements of the Model A design. (Doc. No. 42, at 5-7.) Rather, Plaintiff's only specific response is limited to pointing to two of Defendants' comparisons – the fact that the Model A is fifty-two (52) feet wide, while the Michael is fifty-four (54) feet wide, and the fact that guest bathroom in the Michael is nine by five feet (9' x 5'), while the Model A guest bathroom is eight by five feet (8' x 5') – and the conclusory statement that a reasonable jury could find these comparisons to be evidence of *similarity* between the designs instead of evidence of differences between the designs as claimed by Defendants. (Doc. No. 42, at 6.) Plaintiff relies on the principle that whether or not the designs are "substantially similar" is an issue that *must* be decided by the trier of fact as support for its apparent contention that the Court cannot make the determination at this time and summary judgment is not warranted. (Doc. No. 42, at 7.)

Plaintiff's argument ignores the fact that the Court is actually the trier of fact in the present case and the issue of similarity may be decided by the Court if there is sufficient evidence to make that determination. *See John Alden Homes*, 142 F. Supp. 2d at 1344. Even if the Court finds the floor plans are visually similar with the same type of general layout, the Court can still find their dissimilarities significant. *John Alden Homes*, 142 F. Supp. 2d at1345 (*citing Howard*, 974 F.2d at 1276). With that in mind, the Court must independently review the design of both the Model A and the Michael model and consider the similarities as well as the differences between the two designs. The Court has carefully reviewed the evidence regarding the similarities from Mr. Walker, as well as the copies of the floor plans of the Model A (Doc. No.1-4) and the Michael designs (Doc. No. 1-5.) In this case, the floor plans of the two designs are strikingly similar. The Model A and the Michael designs have the same number and types of rooms, as well as approximately the same square footage. However, the Court recognizes that the number of ways a home can be divided into three bedrooms, two baths, a kitchen, a great room and a garage is finite. *See Howard*, 974 F.2d at 1276.

As discussed above, Defendants submitted a list of specific elements they allege represent "significant dissimilarities" between the two designs including, but not limited to, the presence, shape and/or location of windows on the front of the house; the size and layout of the master bedroom and both bathrooms; the

location of the sink, range, refrigerator and dishwasher in the two kitchens; the type and number of entries into

kitchen (kitchen in Michael is open with two entries and kitchen in Model A is closed with one entry); and the

placement of the vanity and presence of a recess shower in the master bathroom of the Michael, rather than

a tub as in the master bathroom of the Model A.  (Doc. 35-2.)  Although Plaintiff has not specifically addressed

each of the alleged dissimilarities or set forth its own list of similarities, Defendants only evidence on this issue

is the list submitted by a named defendant, which is hardly objective or dispositive as to the issue.  Viewing

the competing designs side by side and considering the limited evidence available in the light most favorable

to Plaintiff, as the non-movant, the Court finds there is a genuine issue of material fact as to whether the

Michael designs are in fact substantially similar to the Model A design and Defendants' motion for summary

judgment must be denied.

     b.  *Whether all seven Defendants were involved in/benefitted from the alleged*
            *infringing activities and if not, whether each is otherwise a proper Defendant.*

  Defendants claim that all but two (Ronald Walker and RDC) of the seven named Defendants were

improperly named and are entitled to summary judgment.  According to Defendants, RDC is in the business

of building homes and since 1999 has designed, advertised, constructed and sold single-family residences

known as the "Michael," the design allegedly infringing on Plaintiff's copyright, and since 2001, Ronald Walker

has been the sole officer and shareholder of RDC.  Although as discussed above, Defendants contend that

RDC and Ronald Walker did not copy Plaintiff's Model A, Defendants concede that RDC and Ronald Walker

are properly named as defendants in the case at bar.   On the other hand, according to Defendants,

Residential Land Acquisitions, LLC, Ameriland Investments, LLC, SGD Investments, LLC, Clair Walker Pope

and Rodney Pope have never engaged in the business of designing, advertising, constructing or participating

in the construction of the "Michael" models of single-family residences and were the only defendants that have

not financially benefitted from any of the alleged infringing activities.  (Doc. No. 35, at 2.)

  According to Plaintiff, it can and actually has established *direct* copyright infringement by proving that

Defendants had access to the copyrighted work and that works in question are "substantially similar," and

therefore Plaintiff may also hold liable any party who engaged in either *vicarious* or *contributory* infringement.

Accordingly, Plaintiff contends that there are numerous genuine issues of material fact to demonstrate that

the five Defendants in question engaged in direct, vicarious and contributory infringement.

Although the Copyright Act does not expressly impose liability on anyone other than direct infringers, courts have long recognized that "[l]iability extends beyond those who directly copy the work and may include those who have control of or substantially assist in the infringement and profit from it, regardless of whether they actually copied anything." *Oravec v. Sunny Isles Luxury Ventures L.C.*, 2006 WL 3734155 *20 (S.D. Fl., July 24, 2006).  These secondary theories of liability are known as vicarious or contributory infringement.  *See MGM Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 125 S.Ct. 2764, 2776 (2005); *Sony Corp. of America v. Universal City Studios, Inc.,* 464 U.S. 417, 435 (1984) (explaining that "vicarious liability is imposed in virtually all areas of the law, and the concept of contributory infringement is merely a species of the broader problem of identifying circumstances in which it is just to hold one individually accountable for the actions of another.").

(1)　　*Claire Walker Pope*

The Supreme Court has recognized that "the lines between direct infringement, contributory infringement and vicarious liability are not clearly drawn."  *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 435, n. 17 (1984) (citations omitted).  Defendants contend Ms. Walker Pope is not liable either directly or indirectly for any infringement of the copyright for the Model A based on the fact that she was never engaged in the business of designing, advertising, constructing, or participating in the construction of the "Michael" models of single-family residences, nor has she ever financially benefitted from any of the allegedly infringing activities.  (Doc. No. 35, at 6).  In response, Plaintiff argues that genuine issues of material fact exist as to the liability of Ms. Walker Pope for direct, vicarious, and contributory infringement.

As discussed above, there is no dispute that Ms. Walker Pope was involved with RDC as a director from 1999 to 2001 and there is no dispute that she had access to the copyrighted Model A design.  In fact, the only issue left to establish Ms. Walker Pope's direct liability for copyright infringement is whether the Michael home design is substantially similar to the Model A, which as discussed above, is a question for trial.  Thus, the Court finds Defendants' claim that Ms. Walker Pope is an improper defendant in the present case is without merit and Defendants' motion for summary judgment as to Ms. Walker Pope must be denied.  Because there is a genuine issue of material fact as to whether Ms. Walker Pope is directly liable for copyright infringement and Plaintiff is entitled to a bench trial that includes Ms. Walker Pope as a named defendant, the Court need not address Plaintiff's alternative argument that Ms. Walker Pope is indirectly liable either through

15

vicarious or contributory copyright infringement at this time.

        (2)     *Residential Land Acquisitions, LLC, Ameriland Investments, LLC, and SGD Investments, LLC*

Contributory infringement originates in tort law and stems from the notion that one who directly contributes to another's infringement should be held accountable. *See Sony v. Universal City*, 464 U.S. at 417. To establish a *prima facie* case of contributory infringement, Plaintiff must establish: (1) a direct infringement, (2) that the Defendants had knowledge of the direct infringement, and (3) that the Defendants intentionally induced, encouraged or materially contributed to the direct infringement. *Grokster*, 125 S.Ct. at 2776. Plaintiff claims that the acts of Defendants Residential Land Acquisitions, Ameriland Investments, and SGD Investments (the "land defendants") in purchasing and selling land upon which RDC constructs homes, including the infringing Michael home designs, facilitates RDC's underlying infringing activities making them liable for contributory infringement.

The three land defendants are each limited liability companies created and owned, at least in part, by Ronald Walker in order to buy and sell land.[6] Defendants moved for summary judgment on Plaintiff's infringement claims against these three defendants arguing that they cannot be liable because none of them were involved in any of the transactions whereby the Michael model homes were built or sold. (Doc. No. 35, at 6-7.) According to Defendants, their involvement was limited to buying the land upon which the homes were to be built and selling the land to RDC at fair market value, which was an entirely separate and distinct transaction from the transaction by which RDC sold the homes it constructed. Defendants contend that the three land defendants are independent real property holding companies that have not received any financial benefit from the alleged infringing activities and are therefore improperly named as defendants in this action.

According to Plaintiff, the three land defendants' act of buying and selling the land on which RDC constructs homes provides a forum in which RDC engages in infringing construction and the defendants are therefore each liable for contributory infringement. (Doc. No. 42, at 14.) In support of this proposition, Plaintiff

---

[6]Mr. Walker is the sole owner of Residential Land Acquisitions, which was formed in 2003. (Doc. No. 42, at 13-14.) Ameriland Investments is owned by both Mr. Walker and his mother Ms. Walker Pope, each owning 50% of the company. (Doc. No. 42, at 14.) Mr. Walker is also a 50% owner of SGD Investments. The other 50% of SGD Investments is owned by Scott Ittersagen, who is not a party to this action. (Doc. No. 42, at 14, n.4.)

cites to *Fonovisa v. Cherry Auction, Inc.*, where the Court of Appeals for the Ninth Circuit held that the plaintiff, the owner of copyrights for musical recordings, had stated a cause of action for contributory infringement against the defendant, the operator of swap meets, for the sales of counterfeit recordings by independent vendors at meets.  76 F.3d 259, 264 (9th Cir. 1996).  The court based its holding on the finding that the defendant knew of the infringing conduct and materially contributed to the infringing activity by actively striving to provide the environment and market for counterfeit recording sales to thrive.  *Id.*  The court specifically noted that the defendant provided support services to the infringers including the provision of space, utilities, parking, advertising, plumbing and customers without which it would be difficult for the infringing activity to take place in the massive quantities alleged.  *Id.*  Accordingly, the court found that the defendant's participation in the sales could not be considered "passive," and the allegations in the case were sufficient to show material contribution to the infringing activity necessary to state a claim .

Plaintiff's reliance on *Fonovisa* is misplaced.  First, *Fonovisa* involved the issue of whether plaintiff had stated a claim against the defendant for contributory infringement, not whether the defendant was in fact liable for contributory infringement for providing the "environment and market."  Despite Plaintiff's contention, *Fonovisa* does not stand for the proposition that a defendant is liable for contributory infringement simply by providing the forum in which the infringing activity occurs.  Rather, if anything, the holding in *Fonovisa* reiterates the requirement that a defendant is only liable as a contributory infringer if the defendant has "knowledge of the infringing activity" and "induces, causes or materially contributes to the infringing conduct of another."  *See Fonovisa*, 76 F.3d at 264.  The Court is not aware of any authority, and Plaintiff has not cited to any authority, supporting Plaintiff's proposition that the act of buying and selling land to one who infringes another's copyright by constructing homes on the land is sufficient, without more, to hold the seller of the land accountable for the infringement.

Viewing the evidence in the light most favorable to Plaintiff and even assuming that Plaintiff has established that the land defendants had knowledge of the infringing activity through Mr. Walker and their dealings with RDC, there is no evidence that the land defendants' act of buying and selling land to RDC induced, caused or materially contributed to RDC's construction of the allegedly infringing Michael homes.  According to Defendants, the three land defendants buy and sell the land to RDC at fair market value in a

separate and distinct transaction from the transaction by which RDC constructs the homes.  Plaintiff does not dispute this fact.

Further, although it is true that RDC could not build the allegedly infringing homes without land, there is no evidence that the land defendants only sold land to RDC for construction of the allegedly infringing design or that their involvement with RDC's infringing activities were anything more than passive land deals completed prior to the construction of homes on the land.  *See Oravec*, 2006 WL 3734155, *22 (the fact that exterior design was substantially complete before defendant signed license agreement or began negotiating with developers to build design could not have induced the direct infringement).  Given the absence of facts in the record which could form the basis for a reasonable inference that the land defendants induced, caused or materially contributed to RDC's alleged infringing conduct, summary judgment is granted to Defendants on the issue of Residential Land Acquisitions, Ameriland Investments, and SGD Investments' liability for contributory infringement.

(3)    <em>Rodney Pope</em>

Defendant Rodney Pope is Ms. Walker Pope's husband.  Although there is no evidence that Mr. Pope had any knowledge of the alleged infringing activities, Plaintiff alleges Mr. Pope is liable for contributory infringement apparently based on his relationship with his wife and their shared financial resources. Defendants move for summary judgment as to Mr. Pope arguing that he has never engaged in the business of designing, advertising, constructing or participating in the construction of the "Michael" models of single-family residences, nor has he ever financially benefitted from any of the alleged infringing activities.  (Doc. No. 35, at 3.) According to Defendants, there is no record that Mr. Pope has any connection to or financial interest in RDC and there is no basis for finding him liable for contributory infringement.  (Doc. No. 35, at 6.)

Plaintiff responds by pointing to the fact that Mr. Pope and his wife share their financial resources and considering Ms. Walker Pope's involvement with RDC and her transfers of land to Mr. Walker there are genuine issues of material fact as to Mr. Pope's liability.  Specifically, Plaintiff cites to at least one occasion where Ms. Walker Pope purchased land using her personal funds, presumably shared with Mr. Pope, and then transferred a portion of the land to Mr. Walker, which was allegedly used as a site for the construction of the infringing Michael design.  (Doc. No. 42, at 14.)  Plaintiff does not assert or present any evidence to show that

Mr. Pope had knowledge of the alleged infringing activities.  Rather, Plaintiff bases its claim against Mr. Pope on the notion that the transfer of land purchased by Ms. Walker Pope with their pooled financial resources to Mr. Walker at cost aided in the direct infringement of the Model A copyright.  (Doc. No. 42 at 13.)

While there is evidence indicating that Ms. Walker Pope may have been aware of the alleged infringing activities and that Mr. Pope shared financial resources with his wife, there is absolutely no evidence in the record to contradict Mr. Pope's deposition testimony that he was not involved in any of Ms. Walker Pope's business activities with HUD and that he was unaware that she purchased land that was later sold to RDC.  (Doc. No. 42-6.)  Plaintiff's claim against Mr. Pope is apparently based on nothing more than speculation.  There is no evidence in the record from which the Court could reasonable infer that Mr. Pope knew of the infringing activities or did anything to induce, cause or materially contribute to RDC's alleged infringing conduct.  Accordingly, Plaintiff cannot establish a claim for contributory infringement and summary judgment is appropriate as to Mr. Pope.

**B.      Defendants' Motion in Limine to Prohibit Reference to or Evidence of Prior Proceeding and Settlement Between Defendant Claire Walker Pope and Plaintiff (Doc. No. 54)**.

Plaintiff intends to introduce evidence of a prior copyright infringement proceeding and non-confidential settlement agreement between Defendant Claire Walker Pope and Plaintiff, wherein Ms. Walker Pope and the company she co-owned HUD, an entity not a party to the case at bar, admitted that Plaintiff was the undisputed owner of the Model A and derivatively of HUD's Concord/Coastland designs that were copied from the Model A plan in violation of Plaintiff's copyright.  (Doc. No. 54, at 2.)  Defendants request that the Court enter an Order in advance of trial prohibiting Plaintiff from introducing documentary evidence of or making reference to the prior settlement or litigation between Plaintiff and Ms. Walker Pope.  Defendants argue that the prior settlement entered into between Ms. Walker Pope, who is one of several Defendants in the present case, and Plaintiff is not admissible to prove liability on the part of the Defendants in this matter.  According to Defendants, the prior settlement dealt with allegations of copyright infringement unrelated to the claims in this case and did not involve the other Defendants in the present case and therefore, is not relevant to the present action.

Based on Federal Rule of Evidence 408, Defendants argue that Plaintiff should not be allowed to offer any evidence of or make reference to the prior settlement during its case-in-chief *absent* some legitimate basis

for its admission other than to demonstrate Defendants' liability for copyright infringement in this action.   In response, Plaintiff contends that all of Ms. Walker Pope's admissions in the prior settlement agreement, as well as the story of the history of infringement and evolution of the various derivative plans is directly relevant to the present action that alleges that Ms. Walker Pope's son, Ronald Walker, also infringed the Model A by taking the Coastland/Concord designs and using them in his separate company.   Plaintiff contends that ownership of the plans and the derivatives is one of Plaintiff's elements of proof and the admissions by Ms. Walker Pope in the settlement agreement were specifically intended to be used should any subsequent dispute arise.  (Doc. No. 57, at 2.)

Moreover, Plaintiff argues that Defendants reliance on Rule 408 is misplaced.  According to Plaintiff, Rule 408 prohibits only the use of evidence of an offer of compromise or acceptance of such an offer to prove liability for or invalidity of *the claims that is then being litigated*, and actually permits such evidence to be used "for another purpose" such as to prove bias or delay, even within the original proceeding.   Further, Plaintiff contends that Rule 408 does not exclude the use of a prior settlement agreement in a subsequent proceeding. (Doc. No. 57, at 3.)  According to Plaintiff, contrary to Defendants' claims, the settlement agreement is not barred by Rule 408 for several reasons: the settlement agreement at issue was in a different case that has long since been completed, it is highly probative on multiple levels in the present action, it was not confidential, and it is not being used to prove the validity, invalidity or amount of a disputed claim.

Although evidence of conduct during settlement negotiations generally is inadmissible to prove a party's liability for the underlying claim, it may be admitted "when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."  Fed. R. Evid. 408.  Defendants are correct that evidence of the prior settlement between Plaintiff and Ms. Walker Pope is not admissible to prove liability on the part of the Defendants in this matter, but the Court cannot say that evidence that Ms. Walker Pope settled copyright infringement claims regarding the same Model A design at issue in this case and that she entered into a settlement admitting that Plaintiff owned the Model A and derivative designs is irrelevant to the issues presented in the case at bar.

If the Court had denied Plaintiff's motion for partial summary judgment as to ownership of the

copyright and access, evidence of the prior settlement, wherein Ms. Walker Pope admitted that Plaintiff owns the Model A and admitted to infringing on that copyright, would clearly be relevant to the Court's consideration of whether Plaintiff carried its burden of proving ownership of a valid copyright and access to the Model A designs or derivative designs owned by Plaintiff.   However, as set forth above, the elements of copyright ownership and access are no longer at issue in the present case.  Regardless, whether or not evidence of the prior settlement is presented to the Court at trial is in fact relevant and admissible as to the remaining issues in this case is a decision that should be made by the Court at the time of the trial.  The fact that this is a bench trial and not a jury trial also weighs heavily in favor of denying the motion and addressing the issue if and when it comes up at trial.  Accordingly, the Court holds that Defendants' Motion in Limine to Exclude Settlement must therefore be denied.

III.    **CONCLUSION**

For the reasons set forth above and for good cause shown, the Court hereby GRANTS Plaintiff's Motion for Partial Summary Judgment as it relates to Plaintiff's ownership of a valid copyright of the Model A and whether Defendants Ron Walker, Ms. Walker Pope and RDC, through Ron Walker, had access to the Model A, but DENIES Plaintiff's Motion for Partial Summary Judgment on all other bases.  The Court also GRANTS Defendants' Motion for Summary Judgment in so far as it pertains to claims against Defendants Residential Land Acquisition, Ameriland Investments, SGD Investments and Mr. Pope, but DENIES Defendants' Motion for Summary Judgment as to all other Defendants .  In addition, the Court also DENIES Defendants' Motion in Limine to Exclude Settlement without prejudice, thus leaving the Court open to consider the relevance and any objections at trial.

An appropriate Order will enter.

Thomas A. Wiseman, Jr.
Senior United States District Judge
Sitting by Designation in the Middle District of Florida